UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-150 (SRN/FLN) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| Maria Antonia Preciado (1),<br>Manuel Lucio Lara (2), | |
| Defendant(s). | |

David Steinkamp, Assistant United States Attorney, for Plaintiff.
Kevin O'Brien, for Defendant Maria Antonia Preciado.
Eric Hawkins, for Defendant Manuel Lucio Lara.

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants Maria Antonia Preciado and Manuel Lucio Lara's motions to suppress evidence obtained as a result of search and seizure (ECF Nos. 28, 29, and 41), Preciado's motion to suppress statements (ECF No. 42), and Preciado's motion for disclosure of confidential informants (ECF No. 36). The motions to suppress search and seizure and statements were referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government and Defendants entered exhibits into evidence, and the Government offered testimony.[1] For the reasons that follow, the Court recommends that Preciado and Lara's motions to suppress evidence obtained as a result of search and seizure (ECF Nos. 28, 29, and 41) be **DENIED**, Preciado's motion to suppress statements (ECF No. 42)

---

1  *See* Exhibit and Witness Lists, ECF Nos. 50, 51.

be **DENIED**, and orders that Preciado's motion for disclosure of confidential informants (ECF No. 36) be **GRANTED in part** and **DENIED in part**.

## I. THE INDICTMENT

On June 22, 2017, a Grand Jury returned the Indictment against Preciado and Lara, charging them with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *See* Indictment, ECF No. 1. The Indictment alleges that beginning at an unknown time through April 2017, Preciado and Lara conspired to distribute a mixture of more than 500 grams of methamphetamine. *See id.* at 1–2. The Indictment further alleges that on or about April 15, 2017, Preciado and Lara possessed with intent to distribute a substantial quantity of methamphetamine of more than 500 grams. *See id.* at 2.

## II. FACTUAL BACKGROUND

Preciado and Lara are married. Beginning in the end of 2016 through early 2017, Officer Michael Flanagan of the Minnesota Bureau of Criminal Apprehension received information from a paid, confidential informant that Preciado and Lara were involved in the transportation and distribution of methamphetamine. Specifically, the confidential informant stated that Preciado and Lara transported methamphetamine from California to Minnesota. On April 8, 2017, Officer Flanagan received information from this same confidential source that Preciado would be traveling from California to Minnesota with a substantial quantity of methamphetamine, and would be arriving in Minnesota around April 15, 2017. The confidential source also provided Officer Flanagan with what they believed was Preciado's cellular phone number. The

2

confidential source provided a description of the vehicle Preciado would be transporting the methamphetamine in: a white Dodge Ram pickup with Texas plates. On April 11, 2017, the same confidential informant again stated that Preciado would be transporting a substantial load of methamphetamine to Minnesota within a few days.

On April 13, 2017, Officer Flanagan, based on the information received from the confidential informant, obtained a state warrant to deploy a pen register, trap, and GPS tracking device to monitor the activity and movement of the cellular phone thought to belong to Preciado. While monitoring the cellular phone tracking data, Officer Flanagan observed that the cellular phone had left California, and was traveling east, toward Texas. Once in central Texas, Officer Flanagan observed that the cellular phone began to travel north, on Interstate 35. Subsequently, Officer Flanagan observed that the cellular phone was continuing to travel north on Interstate 35, and was approaching the Iowa/Minnesota border.

On April 14, 2017, Officer Flanagan fixed the cellular phone's location at an Iowa gas station located roughly twenty-five miles south of the Minnesota border. At that time, Officer Flanagan began visual surveillance, and observed that the cellular phone was traveling in a white Dodge pickup with Texas license plates. Officer Flanagan's intent was to conduct a traffic stop of the white Dodge pickup as it entered Minnesota.

On the same day, Officer Flanagan notified Minnesota Trooper Patrick Buening that the white Dodge pickup was traveling toward Minnesota and was likely transporting methamphetamine. On the morning of April 15, 2017, Officer Flanagan followed the white Dodge pickup as it traveled in northern Iowa. At the same time, Trooper Buening took up a position on Interstate 35, in southern Minnesota, approximately two miles north of the Iowa

3

border. Trooper Buening was in constant radio contact that morning with Officer Flanagan. At around 8:40 a.m., Trooper Buening observed the white Dodge pickup pass his position. As the vehicle passed Trooper Buening, he clocked it traveling at 76 miles-an-hour in a posted 70 miles-an-hour zone.

Trooper Buening then briefly followed the white Dodge pickup before effectuating a traffic stop. Trooper Buening approached the vehicle on the passenger side, identified himself, and explained the reason for the stop. The driver, Preciado, produced a Mexican Driver's License. Lara was seated in the right front passenger seat. Trooper Buening asked for the vehicle's registration and insurance, and Lara handed Trooper Buening the vehicle's registration and insurance certificate. Trooper Buening also asked several questions regarding where Preciado and Lara had traveled from in arriving in Minnesota. Preciado stated that she was traveling from Texas to Rochester, Minnesota, to visit family, and that they had been traveling for two days. In total, Trooper Buening's travel related questions, questions regarding the vehicle's registration and insurance, investigation of Preciado's Mexican Driver's License, and answering follow-up questions from the occupants, took approximately thirty minutes.

After issuing a warning to Preciado, Trooper Buening asked Preciado if there was anything illegal in the vehicle and if he could search it, which the occupants agreed to. Trooper Buening first conducted a canine search of the white Dodge pickup. During the canine search, Trooper Buening's canine partner alerted to the presence of contraband by changing body posture, audibly whining, and scratching on the rear and passenger side of the vehicle as it passed. Trooper Buening also observed that his canine partner indicated to the presence of contraband on the final pass of the vehicle's passenger side. After conducting the canine search,

Trooper Buening, and another Minnesota Trooper who had arrived on the scene, searched the interior of the vehicle and exterior bed. In the bedliner, Trooper Buening observed a bulge. Trooper Buening peeled the bulge back and found several packages between the bedliner and the metal box of the cab. After observing the packages, Trooper Buening placed Preciado and Lara into custody. The white Dodge pickup was towed and impounded and a further search was conducted. Ultimately, a quantity of methamphetamine was found in the packages.

### III. CONCLUSIONS OF LAW

**A.     Motions to Suppress Search and Seizure (ECF No. 28, 29, and 41)**

Preciado and Lara move to suppress all evidence related to the search of the white Dodge pickup as fruit of the poisonous tree under *Wong v. Sun*, 371 U.S. 471 (1963). *See* ECF Nos. 28, 29, and 41. Specifically, they argue that the stop and search of the white Dodge pickup was not supported by probable cause or consent, and the traffic stop was improperly extended to conduct the canine search. *See generally* ECF Nos. 28, 29, 41, 57, and 58. The Government counters that the search of the White Dodge pickup was supported by probable cause, and alternatively, Preciado and Lara consented to the vehicle search and the stop was not improperly extended. *See generally* ECF No. 59.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches, meaning searches conducted "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). Here, the record is uncontroverted that the search of the white

Dodge pickup was conducted without a warrant. Therefore, the Court must determine if the search fell within a recognized warrant or exclusionary rule exception. *See id.*

   **1. The Traffic Stop**

"The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007); *see also Terry v. Ohio*, 392 U.S. 1, 37 (1968); *Orneals v. United States*, 517 U.S. 690, 694 (1996). "[O]fficer[s] may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008). The United States Supreme Court has foreclosed "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir.1994) (citing *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir.1993)); *s+ee also United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002). If the officer is legally authorized to effectuate a traffic stop, the "underlying intent or motivation" does not invalidate the stop. *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir.1990), *cert. denied*, 502 U.S. 962 (1991).

Here, on the morning of April 15, 2017, Officer Flanagan was visually surveilling the white Dodge pickup as it traveled north on Interstate 35 in northern Iowa. At the same time, Trooper Buening had positioned himself just north of the Iowa Border in Minnesota, and was in constant contact with Officer Flanagan. Officer Flanagan had information provided by a confidential informant that Preciado was transporting methamphetamine, and was likely to arrive in Minnesota with a substantial quantity that morning. Officers were aided by a tracking device,

6

secured by a warrant, monitoring the location of a cellular phone thought to be connected with Preciado, and the monitoring of that cellular phone had shown substantial travel from California, approaching Minnesota, corroborating the confidential informant's information. In addition, Trooper Buening had observed the white Dodge pickup traveling above the posted speed limit. At minimum, officers had reasonable suspicion to conduct a traffic stop of the vehicle. *See Linkous*, 285 F.3d at 719. The fact that Officer Flanagan had planned to stop the vehicle before the traffic stop was effectuated is of no consequence. *See Whren*, 517 U.S. at 813. As a result, the traffic stop of the white Dodge pickup was lawful. *See Bloomfield*, 40 F.3d at 915.

### 2. Search of the White Dodge Pickup

Under the automobile exception to the warrant requirement, the police may "search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011). The automobile exception applies to "the containers within [the vehicle] where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Probable cause exists "where there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is a "commonsense, practical question" based on the "totality-of-the-circumstances." *Id.* at 230. "The information from a [confidential informant] is sufficiently reliable if it is corroborated by other evidence, or if the informant has a history of providing reliable information." *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004).

Here, Trooper Buening had probable cause to search the white Dodge pickup. Officer Flanagan had received recent information from a confidential informant, provided over the

7

course of several months, that Preciado and Lara trafficked in narcotics. The confidential informant also provided specific information on two occasions that Preciado would be traveling from California to Minnesota to deliver methamphetamine around April 15, 2017. In addition, the confidential informant had provided a description of the make and model of vehicle she would be traveling in, the vehicle's color, its Texas license plates, and the name of the suspect. Moreover, Officer Flanagan had obtained a warrant to track the movement of a cellular phone that the confidential informant believed was connected to Preciado. Officer Flanagan's observation of the cellular phone's movement provided further corroboration of the confidential informant's proffer of information. Specifically, the evidence showed that the cellular phone was traveling from California to Minnesota, consistent with the information provided by the informant. *See Lucca*, 377 F.3d at 933. In addition, at the time Trooper Buening searched the white Dodge pickup, his canine partner had both alerted and indicated to the presence of methamphetamine. *See, e.g.*, *Bloomfield*, 40 F.3d at 919 (citing *United States v. Place*, 462 U.S. 696, 706 (1983)) (finding that a canine's identification of drugs in luggage or in a car provides probable cause that drugs are present); *see also Acevedo*, 500 U.S. at 580.

Probable cause, "does not deal with hard certainties, but with probabilities[,]'' and is a "fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." *Gates*, 462 U.S. at 238. Here, the factual context in which Trooper Buening conducted the search of the white Dodge pickup was buttressed by facts showing that there was, at minimum, a fair probability that the vehicle would be transporting methamphetamine. *See id.* Because probable cause existed based on the totality of the circumstances, Trooper Buening was permitted to

8

conduct a warrantless search of the white Dodge pickup under the automobile exception. *See Brown*, 634 F.3d 438.

Because the Court has concluded that the search of the white Dodge pickup was supported by probable cause, the Court need not consider whether Preciado and Lara consented to the search of the vehicle or whether the stop was impermissibly extended. In any event, to the extent Trooper Buening extended the traffic stop to ask whether the occupants would agree to a search, and to conduct the actual searches, that extension was not impermissible because Trooper Buening had a reasonable suspicion that Preciado and Lara were engaged in drug trafficking. *See Rodriguez v. United States*, 135 S.Ct. 1609, 162 (2015). "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *United States v. Williams*, 796 F.3d 951, 957 (8th Cir. 2015) (quoting *Hughes*, 517 F.3d at 1016). The Court must consider "the totality of the circumstances" when determining whether an "officer has a particularized and objective basis to suspect wrongdoing." *Id.* (internal citations omitted); *see also United States v. Arvizu*, 535 U.S. 266, 274 (2002).

Here, assuming *arguendo* that the traffic stop was extended beyond the time it took Trooper Buening to investigate Preciado's foreign driver's license and issue a speeding warning, at the time the vehicle was searched the officers were aware of the information provided by a confidential informant connecting what was believed to be Preciado's cellular phone to an identified white Dodge pickup with Texas plates, purportedly transporting methamphetamine. Here, the officers were operating on more than a mere hunch that the vehicle contained criminal evidence. *See Williams*, 796 F.3d at 957. Indeed, they had particularized information regarding

9

Preciado's travels, and the corroborated information provided by the confidential informant engendered an objective reason to suspect that vehicle was transporting methamphetamine. *See id.* Even if all of that evidence only rises to the level of reasonable suspicion, it was sufficient to detain the vehicle until Trooper Buening's canine partner altered to the presence of narcotics in the vehicle. Based on the totality of the circumstances, Trooper Buening had reasonable suspicion to extend the traffic stop, which ripened into probable cause to search the white Dodge pickup when Trooper Buening's canine partner alerted to the presence of narcotics. *See Bloomfield*, 40 F.3d at 919; *see also Arvizu*, 535 U.S. at 274.[2]

---

2   Preciado initially challenged the April 13, 2017, state court issued warrant, and all evidence obtained pursuant to a later April 17, 2017, warrant to search the white Dodge pickup. However, Preciado did not provide supplemental briefing on these warrants, and only the April 13, 2017, tracking warrant was entered into evidence. *See* ECF Nos. 50, 51. Without supplemental briefing on the issue, it is not apparent to the Court whether Preciado is still challenging these warrants. To the extent that she is, the Court concludes that assuming without deciding whether the search warrants lacked probable cause, the evidence derived from these warrants is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). *See United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011). ("[T]he exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that search warrant is later held to be invalid." *Id.* (citing *Leon*, 468 U.S. at 900)). The Eighth Circuit has outlined four scenarios in which an officer's reliance on a warrant would be unreasonable: (1) the officer included information in the affidavit that he knew was false or would have known was false except for his reckless disregard of the truth; (2) the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. *United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 922). There is no evidence in the record that any of these scenarios are applicable here to the issued state warrants.

**B.      Motion to Suppress Statements (ECF No. 42).**

Preciado moves to suppress her statements made during the April 15, 2017, "traffic stop and upon her arrest." ECF No. 42. Specifically, Preciado's moves to "suppress [evidence] obtained in violation of her Fourth Amendment rights, including . . . any statements made subsequent to the unlawful extension" of the traffic stop under the fruit of the poisonous tree doctrine articulated in *Wong*, 371 U.S. at 488.[3] ECF No. 57 at 8. Because the Court concludes that there is no Fourth Amendment violation here, Preciado's motion to suppress statements must be denied.

**C.      Motion for Disclosure of Informants (ECF No. 36).**

Preciado "asks the Court to order the government to disclose the identity of the informant and make that person available for interview." ECF No. 57. Preciado argues the identity of the confidential informant here is particularly important to her defense given that the informant provided officers with significant information regarding her travels and alleged narcotics

---

3    Preciado does not raise Fifth or Sixth Amendment challenges to her statements in her supplemental briefing. The Court notes, however, that Preciado was not entitled to counsel under the Sixth Amendment on April 15, 2017. *See, e.g.*, *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (holding that "the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings" once "the adversary judicial process has been initiated."). The United States Supreme Court has pegged prosecutorial commencement to "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment[,]" not roadside traffic stops. *Id.*; *see also United States v. Gouveia*, 467 U.S. 180, 188 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). In addition, Preciado was not entitled to counsel during the April 15, 2017, traffic stop. *See, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 440 (holding that "persons temporarily detained pursuant to [traffic] stops are not in custody for the purposes of Miranda."). Without the benefit of supplemental briefing, it is not clear exactly what Preciado is challenging under the Fifth and Sixth Amendments. As it stands, the Court finds no violation of Preciado's Fifth or Sixth Amendment rights.

trafficking. *See id.* The Government argues the request is overbroad, but "agrees to make identifying [informant] information available to the Defendants or make the informant available for interview without disclosing the informant's identity one week before trial[,]" if "the government [intends] to call a confidential informant at trial." ECF No. 45 at 4.

The Court concludes that the Government must identify and disclose to Preciado and Lara any informant who was an active participant or witness to facts the Government plans to prove at trial, regardless of whether the witness will testify at trial. *See Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Barnes*, 486 F.2d 776, 778–79 (8th Cir. 1973); *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995).

## IV. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Maria Antonia Preciado and Manuel Lucio Lara's motions to suppress evidence obtained as a result of search and seizure (ECF Nos. 28, 29, and 41) be **DENIED**.

2. Defendant Maria Antonia Preciado's motion to suppress statements (ECF No. 42) be **DENIED**.

## V. ORDER

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Maria Antonia Preciado's motion for disclosure of informants (ECF No. 36) is **GRANTED in part** and **DENIED in part** as follows:

1. The Government must identify and disclose to Preciado and Lara any informant who was an active participant or witness to facts the Government plans to prove at trial, regardless of whether the witness will testify at trial.

2. In all other respects the motion is **DENIED**.

DATED: February 12, 2018 *s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **[date 14 days from R&R date]**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **[same date as above]** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeal.

CASE 0:17-cr-00150-SRN-FLN   Doc. 61   Filed 02/12/18   Page 14 of 14